## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KIRK NIELSEN, MORGAN
OUTLAW, REVEL LUBIN, FELICIA
BRUCE, BARBARA DEVANE, RAY
DAVIS, DONESA JACKSON,
ALIANZA FOR PROGRESS, INC.,
FLORIDA ALLIANCE FOR
RETIRED AMERICANS, INC., and
PRIORITIES USA,

      Plaintiffs,

v.

RON DESANTIS, in his official
capacity as Florida Governor, et al,

      Defendants.

Case No. 4:20-cv-236-RH-MJF

## PLAINTIFFS' RESPONSE IN OPPOSITION TO REPUBLICAN ORGANIZATIONS' MOTION TO INTERVENE AS DEFENDANTS

## I.   INTRODUCTION

There are 138 Defendants in this action. Three more will add nothing except more papers for this Court's review, more discovery for the parties, more motions to respond to, and more time spent in trial, in hearings, and in conferences rehashing points other Defendants have already made. The Republican National Committee, National Republican Congressional Committee, and the Republican Party of Florida (collectively "Proposed Intervenors") seek to protect interests that are already well-represented in this case. Their intervention will only lead to delays

and prejudice to the existing parties while bringing nothing of substance to this litigation.

Denial of Proposed Intervenors' motion to intervene is supported by this Court's decision in *League of Women Voters of Florida v. Detzner*, 283 F.R.D. 687 (N.D. Fla. 2012) (Hinkle, J.). There, would-be intervenors sought permissive intervention in a challenge to Florida laws regulating voter-registration drives. This Court denied their motion, in part, because the intervenors sought "to advocate for a statute and rule they had no right to have enacted in the first place, and they seek to do so based only on what they say—without record support—will be the secondary effects of not upholding the statute and rule." *Id.* at 689. So too here. Proposed Intervenors provide no record support to overcome the presumption of adequate representation. And they express concern over the secondary effects— hypothetical "repercussions throughout the Eleventh Circuit," ECF No. 54, at 9— of not upholding the Challenged Provisions.

The motion to intervene, ECF No. 53, should be denied. In the alternative, Proposed Intervenors should seek leave to file amicus curiae briefs.

## II.   BACKGROUND

Plaintiffs are seven individual Florida voters and three organizations challenging Florida's failure to provide prepaid postage ("Vote-by-Mail Postage Requirement"), its requirement that vote-by-mail ballots be received by 7 p.m. on

Election Day ("Election Day Receipt Deadline"), Fla. Stat. §§ 101.67(2), 101.6103(2), 101.64, and its prohibition on the use of paid organizers to assist voters with collecting ballots ("Voter Assistance Ban"), Fla. Stat. § 104.0616 (collectively, "Challenged Provisions"). ECF No. 37 ¶ 4. Defendants are Florida's Governor, Secretary of State, Attorney General, the Florida Elections Canvassing Commission, and all 67 counties' Supervisor of Elections and County Canvassing Boards, all sued in their official capacities. *Id*. ¶¶ 29–34. All Defendants are charged with overseeing, administering, and/or defending the Challenged Provisions.

On May 21, 2020, Proposed Intervenors filed a motion to intervene as a matter of right and, in the alternative, seek permissive intervention. ECF Nos. 53–54. At the telephonic status conference held on May 22, this Court ordered Plaintiffs' opposition to Proposed Intervenors' motion be filed by May 27, the same day as a motion for preliminary injunction. Plaintiffs' motion for preliminary injunction highlights the need for speedy resolution of this action in time for the 2020 elections.

### III.    ARGUMENT

**A. Proposed Intervenors fail to establish a right to intervene.**

    **1.  Legal standard under Rule 24(a)(2).**

This Court can grant a motion to intervene as a matter of right only if Proposed Intervenors satisfy all four required elements: (1) their application is timely; (2) they have an "interest relating to the property or transaction which is the subject of the action"; (3) they are "so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest"; and (4) their interests are "represented inadequately by the existing parties to the suit." *Stone v. First Union Corp.*, 371 F.3d 1305, 1308–09 (11th Cir. 2004) (quoting *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 593 (11th Cir. 1991)).

Adequate representation by the existing parties to the suit is presumed when an existing party seeks the same objectives as the proposed intervenors. *Stone*, 371 F.3d at 1311 (citing *Clark v. Putnam County*, 168 F.3d 458, 461 (11th Cir. 1999); *see also Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 215 (11th Cir. 1993) ("This court will presume that a proposed intervenor's interest is adequately represented when an existing party pursues the same ultimate objective as the party seeking intervention."). To overcome the presumption, the proposed intervenors must come forward with some contrary evidence. *Stone*, 371 F.3d at 1311; *see also Clark*, 168 F.3d at 461. If this proof is insufficient, a court will then "return[] to the general rule that adequate representation exists '[1] if no collusion is shown between the representative and an opposing party, [2] if the representative does not have or represent an interest adverse to the proposed

- 4 -

intervener, and [3] if the representative does not fail in fulfillment of his duty.'"
*Stone*, 371 F.3d at 1311 (quoting *Clark*, 168 F.3d at 461).

Proposed Intervenors have the burden to show that *all* four elements for
intervention as of right are met. *See Chiles v. Thornburgh*, 865 F.2d 1197, 1213
(11th Cir. 1989); *see also United States v. City of Miami*, 278 F.3d 1174, 1178
(11th Cir. 2002). Here, they cannot because there are more than enough parties to
adequately represent their interests.

### 2. The existing parties more than adequately represent Proposed Intervenors' interests.

Defendants and Proposed Intervenors share the exact same goal: to defend
the laws that Plaintiffs are challenging. In their motion to intervene, Proposed
Intervenors admit that they "wish to defend" and want to "maintain[] the status
quo" of the Challenged Provisions. ECF No. 54, at 10–11. But this is precisely
what Defendants are required to do under the Florida Constitution and Florida
statutes. State officers are sworn to "defend the . . . Government of . . . the State of
Florida." Fla. Const. art. II § 5(b). The Secretary has a statutory duty to "[o]btain
and maintain uniformity in the interpretation and implementation of the election
laws." Fla. Stat. § 97.012(1). The Attorney General has a statutory duty to
"investigate and prosecute . . . any crime involving voter registration, voting, or
candidate or issue petition activities." Fla. Stat. § 16.56(1)(a), (12). And the
Governor "shall take care that the laws be faithfully executed." Fla. Const. art. IV

§ 1(a). Proposed Intervenors' "wish to defend" the Challenged Provisions is adequately represented by Defendants in the exercise of their duties. ECF No. 54, at 10.

The presumption of adequate representation applies with full force where the proposed intervenor is a political party or candidate, as illustrated by *Daggett v. Comm'n on Gov't Ethics & Elec. Practices,* 172 F.3d 104 (1st Cir. 1999). There, the Libertarian Party of Maine and other plaintiffs challenged the constitutionality of the Maine Clean Elections Act. Several candidates from other political parties moved to intervene in defense of the Act, claiming that the defendant state election commission would not adequately represent their interests. Affirming the district court's denial of intervention, the First Circuit emphasized that the movants had failed to rebut two converging presumptions: (1) "that adequate representation is presumed where the goals of the applicants are the same as those of the plaintiff or defendant"; and (2) "that the government in defending the validity of the statute is presumed to be representing adequately the interests of all citizens who support the statute." *Id.* at 111. The First Circuit emphasized that the proposed candidate-intervenors and the state commission shared the common goal of defending the Act, and that there was no "actual conflict of interests" between them. *Id.* at 112; *see also Gonzalez v. Brewer,* 485 F.3d 1041, 1051–52 (9th Cir. 2007) (proponent of voter initiative that enacted law requiring proof of citizenship to vote could not

intervene of right or permissively to defend the legality of the new law; the proposed intervenor failed to make the required "compelling showing" that the defendants "will not adequately represent their interests"); *One Wis. Inst., Inc. v. Nichol,* 310 F.R.D. 394, 398–99 (W.D. Wis. 2015) (Republican officeholders and candidates could not intervene as defendants to defend Wisconsin's voter ID law, because they "shared the same goal" as the Government Accountability Board in defending the voter ID law, and proposed intervenors failed to show the Board's defense was "negligent or undertaken in bad faith") (citation omitted); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 258–59 (D.N.M. 2008) (denying Republican entities' motions to intervene in voting rights case because party "does not assert any protectable interest that the [Secretary of State] is not already adequately protecting").

To the extent Proposed Intervenors have any other hazy interests in this action, they are insufficient to overcome the presumption of adequate representation that 138 Defendants already provide. *Stone*, 371 F.3d at 1311. For instance, Proposed Intervenors vaguely cite *Purcell v. Gonzalez*, 549 U.S. 1 (2006), as standing for their supposed interest in preventing "confus[ing] voters and undermin[ing] confidence in the electoral process." ECF No. 54, at 9. Again, these are interests that existing Defendants are adequately representing. After all, *Purcell* itself was an appeal from government officials seeking relief from a

change to an election law before Election Day. 549 U.S. at 2. It is almost certain

that the existing Defendants who actually oversee Florida's election administration

infrastructure will assert this interest, as they have in past cases before this Court.

*See, e.g.*, *Democratic Exec. Comm. v. Detzner*, 4:18-cv-520-MW-MJF, ECF No.

22 at 18–19 (N.D. Fla. Nov. 10, 2018); *League of Women Voters of Fla. v.*

*Detzner*, 4:18-cv-251-MW-CAS, ECF No. 43 at 27–28 (N.D. Fla. July 5, 2018).

Moreover, Proposed Intervenors' argument that the "*stare decisis* effect" of

an adverse opinion may impact their speculative "future interests" in maintaining

apparently similar, unconstitutional statutes in other states—statutes not at issue

here nor even identified—is not compelling. ECF No. 54, at 9. Besides being based

on pure conjecture, this argument reflects a fundamental misunderstanding of *stare*

*decisis*. It is "not an inexorable command." *State Oil v. Khan*, 522 U.S. 3, 20

(1997) (citation omitted). An injunction from this Court would not have the effect

of automatically invalidating other statutes in other states, even if they bear some

resemblance to the Challenged Provisions.

To support this argument, Proposed Intervenors rely on inapposite authority.

*Chiles v. Thornburgh* involved detainee intervenors facing a legitimate risk of their

rights being impeded by *stare decisis*, because they "claim[ed] an interest in the

very property and very transaction that [wa]s the subject of the main action." 865

F.2d at 1214. The resolution of *Chiles* without detainee intervenors could have

foreclosed, for example, any subsequent *habeas corpus* petitions from the detainees regarding the same legal issue and challenged policy. Nor does *Stone v. First Union Corporation* provide an apt comparison because *all* parties in that case agreed that the proposed intervenor plaintiffs had a legitimate interest justifying intervention. 371 F.3d at 1309. Even then, however, the Eleventh Circuit explained that "the potential for negative stare decisis effects does not automatically grant" intervention as a matter of right. *Id*. at 1310. The court further explained that "one court's ruling on whether the bank's policy, as a matter of law, was in violation of the ADEA could influence later suits" challenging the *same* bank's policy. *Id*. Here, in comparison, Proposed Intervenors only point to the vague possibility that, should Plaintiffs prevail, this Court's ruling "could have repercussions throughout the Eleventh Circuit." ECF No. 54, at 9. There is little risk that this Court enjoining the Challenge Provisions could influence later suits challenging these laws because they will have already been enjoined. Thus, Proposed Intervenors' interest is based on speculative harm in *other* states based on *other* statutes. This distinction conveniently ignores that challenging similar statutes in other states is different from challenging the *same* policy, as was at issue in *Stone*.

Finally, the Secretary of State is already well-represented by counsel who have zealously defended the interests of the Republican Party in voting litigation. *See, e.g.*, *League of Women Voters of Fla. v. Detzner*, 172 So.3d 363 (Fla. 2015);

*Bainter v. League of Women Voters of Fla.*, 150 So. 3d 1115 (Fla. 2014); *League of Women Voters of Fla. v. Fla. House of Representatives*, 132 So.3d 135 (Fla. 2013). Proposed Intervenors have failed to put forth any evidence suggesting that the representation by the able attorneys the Secretary—and the dozens of other Defendants—have engaged will be inadequate. The existing parties are pursuing the "same ultimate objective" as Proposed Intervenors—defending the Challenged Provisions. *Fed. Sav. & Loan Ins. Corp.*, 983 F.3d at 215. Put simply, Proposed Intervenors have failed to overcome the presumption of adequate representation and they are not entitled to intervene as a matter of right. *Clark*, 168 F.3d at 461.

### B. Proposed Intervenors request for permissive intervention should be denied because intervention will delay and unduly prejudice Plaintiffs.

This Court should exercise its discretion to deny Proposed Intervenors' request for permissive intervention. They are likely to delay adjudication of the rights of the original parties and they are unlikely to add anything material for the efficient resolution of this case.

### 1.  Legal standard under Rule 24(b).

Courts have discretion to grant or deny a motion for permissive intervention. "In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(1), (3). When evaluating a motion for permissive intervention, "a district court 'can consider almost any factor rationally relevant.'" *Bake House SB,*

*LLC v. City of Miami Beach*, 2017 WL 2645760, at \*6 (S.D. Fla. June 20, 2017) (quoting *Daggett*, 172 F.3d at 113)). These factors include "'the nature and extent of the intervenors' interest' and 'whether the intervenors' interests are adequately represented by other parties.'" *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 955 (9th Cir. 2009) (citation omitted); *see also In re Pinchuk*, No. 13-MC-22857-GOODMAN, 2014 WL 12600728, at \*6 (S.D. Fla. Jan. 27, 2014) ("[T]he issue of whether the intervenors' interests are adequately represented by other parties . . . is also a factor to be balanced in a permissive intervention assessment.").

> **2. Permissive intervention should be denied because intervention will unduly delay this action's adjudication without adding anything of substance to the case.**

Proposed Intervenors' alternative argument seeking permissive intervention is similarly unpersuasive. Their inclusion as a Defendant in this action would be of a "duplicative nature" and their "claims or interests will unduly delay the adjudication of the rights of the parties to this lawsuit and [are] unlikely to shed any new light on the constitutional issues in this case." *Wollschlaeger v. Farmer*, No. 11-22026-Civ-COOKE/TURNOFF, 2011 WL 13100241, at \*3 (S.D. Fla. July 11, 2011). As discussed above, Proposed Intervenors seek to intervene to defend the Challenged Provisions—yet dozens of Defendants are already charged with this very duty. Courts have time and again denied permissive intervention when

would-be intervenors bring nothing else to the table when their interests are already represented by parties—except a greater likelihood for delaying the adjudication of these urgent election issues. *See, e.g.*, *Lacasa v. Townsley*, No. 12-22432-CIV-ZLOCH, 2012 WL 13069998, at *2 (S.D. Fla. July 6, 2012) (denying permissive intervention where proposed intervenor's interest "will be adequately represented by the existing Defendant" and permitting intervention "will only present a risk of delaying the adjudication of the case"); *League of Women Voters of Fla.*, 283 F.R.D. at 689 (Hinkle, J.) (denying permissive intervention where the proposed intervenors sought only to defend "a statute and rule they had no right to have enacted in the first place" and "ha[d] no right to prevent others from conducting voter-registration drives" or "to make it harder for other qualified applicants to register to vote"); *Wollschlaeger*, 2011 WL 13100241, at *3.

Delays resulting from intervention are important factors for courts to consider, especially for time-sensitive voting rights cases. *See Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1250 (11th Cir. 2002) (recognizing permissive intervention is inappropriate when it "will not unduly prejudice or delay the adjudication of the rights of the original parties" (citing *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984)); *see also ManaSota-88, Inc. v. Tidwell*, 896 F.2d 1318, 1323 (11th Cir. 1990) (affirming denial of permissive intervention when intervention "would severely protract litigation"). This consolidated action

involves multiple plaintiffs and more than one hundred defendants proceeding at a rapid clip toward resolution in time for the 2020 elections, with a trial in just seven weeks. Proposed Intervenors will bring nothing to this litigation except "more issues to decide [and] more discovery requests[.]" *South Carolina v. North Carolina*, 558 U.S. 256, 287 (2010) (Roberts, C.J., concurring in part and dissenting in part). Nor do Proposed Intervenors have any interest in seeking expeditious resolution of the weighty issues before this Court. They admit to "a specific interest in maintaining the status quo" of the Challenged Provisions. ECF No. 54, at 11. It is in their interest to delay resolution as much as possible.

On the other hand, delay will unduly prejudice Plaintiffs who seek speedy resolution of this litigation in time for elections that will be held mere months from now. This is why courts have denied motions for permissive intervention in voting rights disputes in order to protect the rights of the parties. *See, e.g.*, *Ansley v. Warren*, No. 1:16cv54, 2016 WL 3647979, at *3 (W.D.N.C. July 7, 2016) (denying timely intervention motions by Republican state legislators because "allowing the Movants to intervene . . . would needlessly prolong and complicate this litigation, including discovery, and delay the final resolution of this case"); *One Wis. Inst. Inc.*, 310 F.R.D. at 399 (denying permissive intervention to Republican officials and voters because "the nature of this case requires a higher-than-usual commitment to a swift resolution"); *Herrera*, 257 F.R.D. at 259

(denying timely intervention motions by Republican entities seeking to defend restrictive election law because "intervention is likely to lead to delays that could prejudice the Plaintiff's case and the Defendant" by increasing pleadings and discovery).

Finally, if Proposed Intervenors are permitted to join this action, they will be the *only* political parties present in this action. No entity of the state or national Democratic Party is a party to this litigation. Plaintiffs are seven voters and three organizations, none of which are organs of the Democratic Party.[1] Alianza for Progress is a nonpartisan organization that works to support progressive policies for Florida's Puerto Rican and Hispanic populations. ECF No. 37 ¶ 22. The Florida Alliance for Retired Americans is a 501(c)(4) nonprofit social welfare organization that has a mission to ensure social and economic justice as well as full civil rights for retirees. *Id*. ¶ 26. And Priorities USA is a 501(c)(4) nonprofit advocacy and service organization that has a mission of building a sustainable infrastructure to engage Americans in the progressive movement by running a permanent digital campaign to persuade and mobilize citizens around issues and elections. *Id*. ¶ 28.

None of these organizations has the specific mission of electing Democrats to office. Compare that to Proposed Intervenors' overt partisan goals. The RNC "supports Republican candidates for public office at all levels, coordinates

---

[1] Nor are any of the *Williams* Plaintiffs entities of the state or national Democratic Party. *See* 1:20-cv-67, ECF No. 35 ¶¶ 11–21 (N.D. Fla. Apr. 20, 2020).

fundraising and election strategy, and develops and promotes the national Republican platform." ECF No. 54, at 3. The NRCC is "dedicated *solely* to electing Republicans to the United States House of Representatives." *Id*. (emphasis added). And the state Republican Party "supports the election of duly nominated Republican candidates through fundraising, voter registration, get-out-the-vote drives, and other campaign activities." *Id*. at 3–4. None of the Plaintiffs' interests or missions is in the same ballpark as Proposed Intervenors' naked partisan interests in this action. *See* ECF No. 27 ¶¶ 22–28.

## C. Proposed Intervenors can be permitted to file amicus curiae briefs.

Proposed Intervenors need not be barred from participating in this case should this Court deny their motion to intervene. Nor are Plaintiffs advocating to silence the Republican Party from expressing their views on whatever benefits for Florida voters they can glean from the Challenged Provisions. Instead, Proposed Intervenors should seek leave to file an amicus brief for this Court's benefit. This is a path this Court and many others have charted for parties whose intervention motions were denied. *See League of Women Voters*, 283 F.R.D. at 689; *see also Vazzo v. City of Tampa*, No. 8:17-cv-2896-T-36AAS, 2018 WL 1629216, at *5 (M.D. Fla. Mar. 15, 2018) (denying motion to permissively intervene and permitting group to appear as amicus to provide the court with its "'helpful, alternative viewpoint' without causing undue delay or prejudice to the adjudication

of the original parties' rights"). *Wis. Educ. Ass'n Council v. Walker*, 824 F. Supp. 2d 856, 861 (W.D. Wis. 2012), *aff'd in relevant part*, 705 F.3d 640, 658-59 (7th Cir. 2013) (denying motions to intervene while allowing movants to file *amicus* briefs in support of state defendants). Plaintiffs do not oppose any motion from Proposed Intervenors seeking leave to file amici briefs.

## IV.    CONCLUSION

For these reasons, Proposed Intervenors' Motion to Intervene as of right under Rule 24(a) should be denied. Furthermore, Plaintiffs respectfully request that the Court exercise its sound discretion in denying permissive intervention under Rule 24(b). Finally, Plaintiffs do not oppose Proposed Intervenors' seeking leave to file amici briefs.

## LOCAL RULE 7.1(F) CERTIFICATION

The undersigned certifies that this motion contains 3,552 words, within the requirements of Local Rule 7.1(F).

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on May 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

Dated: May 27, 2020                  By: */s/ Frederick S. Wermuth*

                                           Frederick S. Wermuth
                                           Florida Bar No.: 0184111
                                           KING, BLACKWELL, ZEHNDER
                                                & WERMUTH, P.A.
                                           P.O. Box 1631
                                           Orlando, FL 32802-1631
                                           Telephone: (407) 422-2472
                                           Facsimile: (407) 648-0161
                                           fwermuth@kbzwlaw.com

Marc E. Elias
John Devaney
Amanda R. Callais*
Zachary J. Newkirk*
Christina A. Ford
PERKINS COIE LLP
700 Thirteenth St., N.W., Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9959
melias@perkinscoie.com
jdevaney@perkinscoie.com
acallais@perkinscoie.com
christinaford@perkinscoie.com

Lilian Timmermann**
PERKINS COIE LLP
1900 Sixteenth Street, Suite 1400
Denver, CO 80202
Telephone: (303) 291-2300
Facsimile: (303) 291-2400
ltimmermann@perkinscoie.com

*Counsel for the Plaintiffs*
* *Pro Hac Vice motion pending*
** *Pro Hac Vice motion forthcoming*