## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

KIRK NIELSEN, et al.,

    *Plaintiffs*,

        v.

RON DESANTIS, et al.,

    *Defendants*.

Case No. 4:20-cv-236-RH-MJF

Judge Robert L. Hinkle

DREAM DEFENDERS, et al.,

    *Plaintiffs*,

        v.

RON DESANTIS, et al.,

    *Defendants*.

Case No. 1:20-cv-67-RH- GRJ

Judge Robert L. Hinkle

## <u>INTERVENORS' MOTION FOR PRELIMINARY INJUNCTION</u>

**COMES NOW**, Intervenors, DEBORAH C. GRUBB, DOUGLAS E. HALL, CARL F. MCCOY, JAMES K. KRACHT, DOLOR GINCHEREAU, and the FLORIDA COUNCIL OF THE BLIND, by and through undersigned counsel, and pursuant to Rule 68, Fed. R. Civ. P. 65(a) and respectfully requests that this court issue a preliminary injunction requiring Defendants, LAUREL M. LEE, in her

official capacity as Florida Secretary of State and each of the individual Supervisors

of Elections,[1] and states as follows:

---

[1] This includes Defendants KIM A. BARTON, in her official capacity as Supervisor of Elections for ALACHUA County, NITA CRAWFORD, in her official capacity as Supervisor of Elections for BAKER County, MARK ANDERSEN, in his official capacity as Supervisor of Elections for BAY County, TERRY L. VAUGHAN, in his official capacity as Supervisor of Elections for BRADFORD County, LORI SCOTT, in her official capacity as Supervisor of Elections for BREVARD County, PETER ANTONACCI, in his official capacity as Supervisor of Elections for BROWARD County, SHARON CHASON, in her official capacity as Supervisor of Elections for CALHOUN County, PAUL A. STAMOULIS, in his official capacity as Supervisor of Elections for CHARLOTTE County, SUSAN A. GILL, in her official capacity as Supervisor of Elections for CITRUS County, CHRIS H. CHAMBLESS, in his official capacity as Supervisor of Elections for CLAY County, JENNIFER J. EDWARDS, in her official capacity as Supervisor of Elections for COLLIER County, ELIZABETH P. HORNE, in her official capacity as Supervisor of Elections for COLUMBIA County, MARK F. NEGLEY, in his official capacity as Supervisor of Elections for DESOTO County, STARLET CANNON, in her official capacity as Supervisor of Elections for DIXIE County, MIKE HOGAN, in his official capacity as Supervisor of Elections for DUVAL County, DAVID H. STAFFORD, in his official capacity as Supervisor of Elections for ESCAMBIA County, KAITI LENHART, in her official capacity as Supervisor of Elections for FLAGLER County, HEATHER RILEY, in her official capacity as Supervisor of Elections for FRANKLIN County, SHIRLEY G. KNIGHT, in her official capacity as Supervisor of Elections for GADSDEN County, CONNIE SANCHEZ, in her official capacity as Supervisor of Elections for GILCHRIST County, ALETRIS FARNAM, in her official capacity as Supervisor of Elections for GLADES County, JOHN HANLON, in his official capacity as Supervisor of Elections for GULF County, LAURA HUTTO, in her official capacity as Supervisor of Elections for HAMILTON County, DIANE SMITH, in her official capacity as Supervisor of Elections for HARDEE County, BRENDA HOOTS, in her official capacity as Supervisor of Elections for HENDRY County, SHIRLEY ANDERSON, in her official capacity as Supervisor of Elections for HERNANDO County, PENNY OGG, in her official capacity as Supervisor of Elections for HIGHLANDS County, CRAIG LATIMER, in his official capacity as Supervisor of Elections for HILLSBOROUGH County, THERISA MEADOWS, in her official capacity as Supervisor of Elections for HOLMES County, LESLIE ROSSWAY SWAN, in her official capacity as Supervisor of Elections for INDIAN RIVER County, SYLVIA D. STEPHENS, in her official capacity as Supervisor of Elections for JACKSON County, MARTY BISHOP, in his official capacity as Supervisor of Elections for JEFFERSON County, TRAVIS HART, in his official capacity as Supervisor of Elections for LAFAYETTE County, ALAN HAYS, in his official capacity as Supervisor of Elections for LAKE County, TOMMY DOYLE, in his official capacity as Supervisor of Elections for LEE County, MARK EARLEY, in his official capacity as Supervisor of Elections for LEON County, TAMMY JONES, in her official capacity as Supervisor of Elections for LEVY County, GINA MCDOWELL, in her official capacity as Supervisor of

## I.      Preliminary Statement

In March 2020, the Florida Council of the Blind's members believed that they were on the threshold of being able to cast an absentee vote with the same ease and privacy of any other citizens.  Software developed by Democracy Live was on the Director of Elections desk and about to be certified.  This software would have

---

Elections for  LIBERTY County, THOMAS "TOMMY" R. HARDEE, in his official capacity as Supervisor of Elections for MADISON County, MICHAEL BENNETT, in his official capacity as Supervisor of Elections for MANATEE County, WESLEY WILCOX, in his official capacity as Supervisor of Elections for MARION County, VICKI DAVIS, in her official capacity as Supervisor of Elections for MARTIN County, CHRISTINA WHITE, in her official capacity as Supervisor of Elections for MIAMI-DADE County, JOYCE GRIFFIN, in her official capacity as Supervisor of Elections for MONROE County, VICKI P. CANNON, in her official capacity as Supervisor of Elections for NASSAU County, PAUL A. LUX, in his official capacity as Supervisor of Elections for OKALOOSA County, DIANE HAGAN, in her official capacity as Supervisor of Elections for OKEECHOBEE County, BILL COWLES, in his official capacity as Supervisor of Elections for ORANGE County, MARY JANE ARRINGTON, in her official capacity as Supervisor of Elections for OSCEOLA County, WENDY SARTORY LINK, in her official capacity as Supervisor of Elections for PALM BEACH County, BRIAN E. CORLEY, in his official capacity as Supervisor of Elections for PASCO County, DEBORAH CLARK, in her official capacity as Supervisor of Elections for PINELLAS County, LORI EDWARDS, in her official capacity as Supervisor of Elections for POLK County, CHARLES OVERTURF, in his official capacity as Supervisor of Elections for PUTNAM County, TAPPIE A. VILLANE, in her official capacity as Supervisor of Elections for SANTA ROSA County, RON TURNER, in his official capacity as Supervisor of Elections for SARASOTA County, CHRIS ANDERSON, in his official capacity as Supervisor of Elections for SEMINOLE County, VICKY OAKES, in her official capacity as Supervisor of Elections for ST. JOHNS County, GERTRUDE WALKER, in her official capacity as Supervisor of Elections for ST. LUCIE County, WILLIAM KEEN, in his official capacity as Supervisor of Elections for SUMTER County, GLENDA B. WILLIAMS, in her official capacity as Supervisor of Elections for SUWANNEE County, DANA SOUTHERLAND, in her official capacity as Supervisor of Elections for TAYLOR County, DEBORAH K. OSBORNE, in her official capacity as Supervisor of Elections for UNION County, LISA LEWIS, in her official capacity as Supervisor of Elections for VOLUSIA County, HENRY WELLS, in his official capacity as Supervisor of Elections for WAKULLA County, BOBBY BEASLEY, in his official capacity as Supervisor of Elections for WALTON County, CAROL F. RUDD, in her official capacity as Supervisor of Elections for WASHINGTON County.  This motion does not include relief from Governor Ron DeSantis or each counties Canvasing Board.

allowed persons who are blind to be able to receive absentee ballots via email, and then use their screen reading software to fill out the ballots, which would then be printed out and mailed.  After certification, then the software could be purchased by all 67 supervisors of elections, and used in the same exact way as the supervisors had conducted absentee voting with those who are in the military or overseas under Uniformed and Overseas Citizens Absentee Voting Act.  With federal money flooding in from the CARES Act, the purchase of these systems would essentially be subsidized by the federal government.

However, in March, this progress lost its momentum and these citizen's Florida and federal right to have an accessible ballot became a pawn in a political battle regarding the right to vote.  While the right to vote should never become political, there is no reason whatsoever that the certification and the implementation of the Democracy Live software should be further delayed, and a Preliminary Injunction to ensure these blind voters have the same opportunity as other citizens to exercise their right to vote.  Furthermore, over the past month, district courts in New York, Michigan, and Pennsylvania have been faced with identical issues that have granted a similar remedy to what the intervenors seek in this action.  See Drenth v. Boockvar, 1:20-CV-00829, 2020 WL 2745729 (M.D. Pa. May 27, 2020)(granting preliminary injunction for accessible write-in ballot for blind

voters); <u>Powell v. Benson</u>, 2:20-cv-11023-GAD-MJH (E.D. MI May 19, 2020),

found at https://www.browngold.com/wp-content/uploads/Powell-031-Filed-

Consent-Decree-ACE.pdf (consent decree for accessible absentee ballots).

<u>Hernandez v. New York State Board of Elections</u>, Case No: 1:20-cv-04003.[2]

Unlike these other states, the Secretary of State has admitted as follows:

> The Secretary can represent to this Court that the testing is complete,
> and the results are under review

DE 209, p. 3. According to the declarants, this has been under review for months.

As such, the proposed intervenors could not have been more timely and the Florida

Council of the Blind and its members are entitled to immediate injunctive relief to

put the certification of Democracy Live back on the rails and facilitate its journey to

fruition.

## II.    Facts

The Florida Council of the Blind, Inc. is an organization of and for persons

who are blind and is the Florida affiliate of the American Council of the Blind.

Declaration of James Kracht (Kracht Dec) ¶ 5. Its purpose is to make life better

through public education, legislative actions, and offer educational, social, and

economic opportunities specific to the needs of blind individuals. <u>Id</u>. FCB is

---

[2] Found at https://dralegal.org/wp-
content/uploads/2020/06/38_Stipulation_of_Settlement_and_Withdrawal_of_Prelim_Injunction_accessible.pdf

comprised of over 800 members who live throughout the State of Florida, and are predominately blind or deaf-blind, and are otherwise qualified individuals with disabilities within the meaning of all applicable statutes. Id. One of the major focuses of FCB was to ensure that persons who are blind become involved with governmental officials and community action and have equal access to the ability to be able to vote privately and independently in all elections.  Id.

From the 2000 elections, FCB became a leader in ensuring that accessible and audible voting machines were obtained and to ensure that such machines were maintained.[3] Id. ¶ 6.  FCB also had two of its members on the first post Bush v. Gore Secretary of State's Disability Task Force and subsequent HAVA Working Group. Id. ¶ 5.  FCB worked to ensure that Florida law was changed to include accessibility for voting through accessibility for polling places in § 101.715, Fla. Stat., and with vote by mail ballots in § 101.662, Fla. Stat.

In 2018, when Florida still had not complied with the requirements under the promise in the accessible vote-by-mail law in Florida, James Kracht, who is an officer of FCB approached and met with Director of the State Division of Elections, Maria Matthews, on May 7th, and discussed  utilizing recently distributed federal

---

[3] See The White Cane Bulletin March-April 2015, President's Message
https://www.fcb.org/node/305 (last accessed May 31, 2020)

funding from the Help America Vote Act (HAVA) for the state's purchase, certification and approval of accessible vote-by-mail software. Id. ¶ 7

That same month, FCB accepted this as a mission and at their convention in Jacksonville on May 20, 2018. FCB adopted a resolution to have equal access to absentee voting in Florida, and to encourage the certification of an accessible voting by mail system and that such voting systems to be used by all 67 counties.  Id. at ¶ 8

In September 2019, FCB discovered that Florida was proceeding with certification of is currently proceeding with certification of the Democracy Live Accessible Vote by Mail Software. Democracy Live was the same vendor that had Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) software certified by the state in 2016.  Id. at ¶ 9, Declaration of Bryan Finney (Finney Dec.) ¶ 4. Since 2016, Florida has implemented an ability to ensure that Florida citizens in the military receive ballots, the State of Florida has implemented the UOCAVA, whereby members of the military and others overseas can receive their absentee ballot in an electronic format, print them out and send them so their vote can be counted.

The Democracy Live Software was the answer to this issue of being able to vote absentee confidentially and privately by using the screen reader on an electronic

device. Kracht Dec. ¶ 9.  The Democracy Live is an accessible online balloting portal where the ballots are generated and stored in a federally approved secure cloud. Finney Dec ¶5. A voter using the system would access a link available on the county web site or the ballot would be sent directly to the voter upon request. Id. ¶7 The balloting portal has been developed to the accessibility compliance standard of WCAG 2.0 Level AA conformance. Id. ¶8 As such, the voter who is blind would use their screen reader or their tactile input device to access, mark and print their ballot from their own computer or device. Id. ¶9

The voter starts the process by logging into the online portal using their first, last and date of birth to pull up their correct ballot. Id. ¶10 Once the ballot is pulled up, the voter can listen and navigate through the ballot using their computer to mark their ballot selections. Id. ¶10 When finished marking the ballot, the voter can listen to a summary of their selections and go back and modify their choices if they choose. Id. ¶10 When the voter is satisfied with their selections, the system prompts the voter to print the ballot and any required return materials. Id. ¶10. The voter would then place their ballot and any required documents into an envelope and mail the ballot back to their local elections' office. Id. ¶ 10  According to the vendor, they work directly with each jurisdiction to support and implement the system. Finney ¶ 11. On average, system implementation can be done in less than one to three days.

Finney ¶ 11.  Most of the implementation work is done by Democracy Live.  Id.  The entire statewide costs for the 2020 Presidential election is approximately one to 1.2 million dollars. Finney ¶ 12.  This same software has been used in thousands of jurisdictions across the country. Id. ¶ 13  Furthermore, numerous other states and jurisdictions, including, but not limited to California, Colorado, Washington, Oregon, Washington D.C., Delaware, Ohio, New Jersey, Vermont, West Virginia, Maryland, and Michigan provide accessible electronic absentee ballot marking tools using commercially available systems that allow voters to receive ballots online or by email, mark ballots on their computers using assistive technology, and return ballots via online submission, email, or postal mail. Id. ¶ 13

In September 9, 2019, James Kracht again contacted Director Matthews and offered FCB's assistance with regards to the certification process of the Democracy Live software. Kracht ¶ 10. Kracht emphasized the importance of the Democracy Live voting system that would enable voters with disabilities to vote by mail privately and verifiably without assistance and requested expedited certification.  Id. On November 7, 2019, James Kracht contacted Director Matthews and asked for update and urging the immediate completion of Democracy Live software. Id. ¶11.

On November 23, 2019, FCB passed another resolution to file a complaint with the Department of Justice for the failure of the State of Florida to certify an

accessible vote by mail system, and sent a copy of the resolution to Governor DeSantis and Secretary of State Lee as well as Director Matthews. Id. ¶12.  FCB also urged its county affiliate presidents to contact their county supervisors of elections and request the acquisition of the Democracy Live Software voting system.  Id. ¶13. On May 12, 2020, James Kracht was advised that the application of the approval report for the Democracy Live software was on Director Matthew's desk.  Id. ¶ 14.

After not hearing from Director Matthews or the State of Florida, FCB reached out to Director Matthews on May 20, 2020. Id. ¶ 15 James Kracht wrote to Director Matthews and suggested that since the  Federal Elections Commission authorized use of federal funding from the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act for an absentee voting system, that Florida should purchase that Democracy Live Software to ensure that counties can at last comply with the state law mandating accessible mail-in-ballots in time for a 2020 election launch. Id.

James Kracht has not heard from Director Matthews since March of 2020, and because of this lawsuit, as well as other political implications of voting by mail, it appears that this effort to get this software certified has been derailed. Id. ¶16. Director Matthews has not contacted James Kracht or any other member of FCB

regarding the certification of the Democracy Live Software.  In addition to speaking to the state election officials, FCB has additionally contacted and plead with their supervisors of Elections to acquire the software once certified.

James K. Kracht, Deborah C. Grubb, Douglas E. Hall, Carl F. McCoy and Dolor Ginchereau are all members of FCB and are blind. Kracht Dec.; Grubb Dec., Hall Dec., McCoy Dec., Gincherau Dec..   They all wish to be able to vote independently and cast a secret ballot in the primary election in August 18, 2020, as well in the General Election in November 3, 2020.  Like any other Florida voter, they would like the ability to vote by mail.  It is more concerning for Ms. Grubb, Mr. Hall, Mr. McCoy, Mr. Kracht, and Ms. Ginchereau because of the COVID-19 pandemic.  Each of these individual intervenors are over sixty-five years old and have several risk factors to contract COVID-19.

Mr. Ginchereau is 68 years old, suffers from asthma, and has a stent in his heart.  Gincherau Dec.  Ms. Grubb is 72 years old and a diabetic. Grubb Dec Mr. Hall is 72 years old and is the sole caregiver for his wife Nancy Burgess-Hall, who is 65 years old and is immunocompromised due to severe advanced Rheumatoid arthritis (RA), heart condition, asthma, an open leg wound, heat and humidity intolerance, and has reduced stamina. Hall Dec. The Halls must avoid any situation

that could result in infections or viruses.  Mr. Kracht is 70 years old and Mr. McCoy is 93 years old. McCoy Dec.

In order for these intervenors to vote, they would need to be driven to a board of elections office to use a voting machine or would need to seek in-person assistance from others to complete their absentee ballots.  Both of these options put them at risk of COVID-19 infection.

FCB and its members expect to have the same ability to vote as any other Florida Citizen, which includes the ability to vote by mail in a private and secure manner. Defendants' failure to meet their obligations to provide them with an equal opportunity to vote absentee constitutes discrimination, and the remedy is a method that is readily available.

### III.    Argument

#### A. Standard of Law for a Preliminary Injunction

"The standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that the plaintiff must show a likelihood of success on the merits rather than actual success."   Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12, 107 S.Ct. 1396, 1404 (1987)   "A district court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the

injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." Jones v. Governor of Florida, 950 F.3d 795, 806 (11th Cir. 2020)(*quoting* Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000)

### B.  substantial likelihood of success on the merits

Section 504 of the Rehabilitation Act of 1973, as amended, provides "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance…" 29 U.S.C. §794(a). All defendants receive Federal financial assistance for the purposes of voting, and specifically for persons with disabilities though both the Help America Vote Act (HAVA), 52 U.S.C. § 20901, as well as the 400 million dollars available in the Election Assistance Commission in the Coronavirus Aid, Relief, and Economic Security Act (CARES) Act, Pub. L. 116-136. A qualified individual with a disability is one who meets the essential eligibility requirements for the services in question. 28 C.F.R. § 41.32.

Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131-12165, provides at §12132 that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." "Public entities" include any department, agency, special purpose district, or other instrumentality of a State or States or local government; 42 U.S.C. §12131(1)(B), and similarly, *Ex Parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L.Ed. 714 (1908), allows a party to seek prospective injunctive relief against a state or local official for violating a federal law.  Nat'l Ass'n of the Deaf v. Florida, 945 F.3d 1339, 1351–52 (11th Cir. 2020).  The Intervenors are challenging the program and service of voting in the state of Florida, and the officials who are primarily responsible for administering the Florida's election system and registering voters are the Secretary of State at the state level and the Supervisors of Elections at the county level. Jones v. DeSantis, 2020 WL 2618062, at *11 (N.D. Fla. 2020)

A qualified individual with a disability is an individual who, with or without reasonable modifications rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity. 42 U.S.C. § 12131(2).

The ADA prohibits discrimination against a disabled person by reason of the person's disability. See 42 U.S.C. § 12132. To state a claim under Title II of the ADA, Plaintiff must allege: (1) that he or she is a qualified individual with a disability; (2) that he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity; (3) by reason of such disability. Id.; Shotz v. Cates, 256 F.3d 1077, 1079 (11th Cir. 2001). "Because causes of action brought under Title II of the ADA and Section 504 of the Rehabilitation Act are essentially identical, they can be analyzed together." Savage v. S. Fla. Reg'l Transp. Auth., 523 F. App'x 554, 554 (11th Cir. 2013); Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000) ("Discrimination claims under the Rehabilitation Act are governed by the same standards used in ADA cases, and therefore we will discuss these two claims together." (citation omitted)). Generally, case law interpreting one statute as if it applies directly to the other.

**1. Intervenors are qualified individuals with disabilities and have standing to bring this action**

Individual Intervenors, Deborah Grub, Douglass E. Hall, Carl F. McCoy, James Kracht, and Dolor Gincherau are all persons with disabilities because they are blind and cannot see.  42 U.S.C. § 12102(1)(A-B) All individual intervenors are registered voters in the State of Florida and would like to vote absentee in a method

that secures their privacy.  As such, each of these intervenors have been harmed by the failure to have a method in which cast an absentee vote independently.

The Florida Council of the Blind, Inc., has standing in both its own right and by virtue of its 800 members throughout the state of Florida, including the named individual intervenors,  who would each have standing in this case.  FCB has experienced an injury in fact when it has been advocating for and expending resources for the implementation of accessible voting for the blind.  See Warth v. Seldin, 422 U.S. 490, 511, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).  In addition, by virtue of its 800 members, each with standing to bring this action, and the fact that this action is germane to FCB's purpose, it also has standing.  See Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977).

**2. Intervenors were excluded from participation in or denied the benefits of the services, programs, or activities of a public entity or otherwise discriminated against by such entity by reason of such disability**

Florida's reliance exclusively on paper absentee ballots has kept one group of people with disabilities—those with vision disabilities from participating in absentee and mail-in voting. Florida's Absentee Voting program is inaccessible to Plaintiffs because their disabilities prevent them from reading, marking, and/or signing a ballot with a pen or marker. Voters with vision disabilities either vote in

person on Election Day so they can vote privately and independently using accessible voting machines, or are forced to give up their privacy and independence by having others read and mark their ballots at home. Today, in the midst of the novel coronavirus pandemic, remedying this discrimination has become a matter of life and death. Defendants have acted swiftly and decisively to allow other voters to avoid the risk of contracting the novel coronavirus by voting absentee, but refused to take any meaningful steps to similarly protect those with vision disabilities.

A public entity may not, in providing any aid, benefit, or service,  "[d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service[,] [a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others[,]" or "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others[.]"  28 C.F.R.  §§ 35.130(b)(1)(i)-(iii); accord 45 C.F.R. § 84.4(b)(1)(ii)-(iii) (Rehabilitation Act).  Nor can a public entity employ unnecessary policies, practices, criteria or methods of administration that

have the effect or tendency of excluding or discriminating against persons with disabilities. 28 C.F.R. § 35.130(b)(3), (8).

The ADA and Section 504 specifically require covered entities to "take appropriate steps to ensure that communications with applicants, participants, members of the public … with disabilities are as effective as communications with others." 28 C.F.R. § 35.160. The applicable regulations are clear that public entities must provide individuals with auxiliary aids and services under the ADA and Section 504:

> (b)(1) A public entity shall furnish appropriate auxiliary aids and services where necessary to afford individuals with disabilities… an equal opportunity to participate in, and enjoy the benefits of, a service, program, or activity of a public entity.
>
> (b)(2) … In determining what types of auxiliary aids and services are necessary, a public entity shall give primary consideration to the requests of individuals with disabilities. In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.

28 C.F.R. § 35.160 (emphasis added); See also 29 U.S.C. § 794. Auxiliary aids and services include "accessible electronic and information technology" such as the accessible absentee ballots Intervenors seek.   28 C.F.R. § 35.104. Florida recognizes this duty when its legislature enacted Florida Statute 101.662, which provides as follows:

Accessibility of vote-by-mail ballots. It is the intent of the Legislature that voting by vote-by-mail ballot be by methods that are fully accessible to all voters, including voters having a disability. The Department of State shall work with the supervisors of elections and the disability community to develop and implement procedures and technologies, as possible, which will include procedures for providing vote-by-mail ballots, upon request, in alternative formats that will allow all voters to cast a secret, independent, and verifiable vote-by-mail ballot without the assistance of another person.

This Florida law was initially passed in 2002, in response to the funding provided through the Help America Vote Act (HAVA), which was passed as a result of the 2000 elections.

The Eleventh Circuit has interpreted the standard for effective communication as obtaining an equal opportunity to participate in obtaining, benefiting, and utilizing programs and services.  Silva v. Baptist Health S. Florida, Inc., 856 F.3d 824, 834 (11th Cir. 2017).  "In other words, the ADA and RA focus on the communication itself, not on the downstream consequences of communication difficulties, which could be remote, attenuated, ambiguous, or fortuitous." Id.

In this matter, for the past two years, the Intervenors have continually advised the Director of the State Division of Elections, Maria Matthews, and its membership has contacted their own supervisors of elections and have advised them that the existing absentee voting system denies them as well as all citizens who are blind the

opportunity to cast a private and secure vote.  The Intervenors have urged them to adopt the Democracy Live system, and currently, they are ignored.   In this circumstance, an undue delay is tantamount to the denial of their request for this auxiliary aid. Bhogaita v. Altamonte Heights Condo. Ass'n, Inc., 765 F.3d 1277, 1286 (11th Cir. 2014).

### C. Irreparable injury will be suffered unless the injunction issues; and the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party.

In Jones v. Governor of Florida, 950 F.3d at 828, the Eleventh Circuit upheld this Court's finding that impingement on the right to vote is an irreparable injury:

> An injury is "irreparable if it cannot be undone through monetary remedies." Scott v. Roberts, 612 F.3d 1279, 1295 (11th Cir. 2010) (quotation omitted). Casting a vote has no monetary value. It is nothing other than the opportunity to participate in the collective decisionmaking of a democratic society and to add one's own perspective to that of his or her fellow citizens. Each vote provides a unique opportunity to do that. No compensation a court can offer could undo that loss. The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm.

Id.

The Intervenors are requesting that the Defendants follow though with their obligations to provide an accessible absentee ballot which was their obligation under the ADA and RA since 1990, and their specific obligation under Florida law

since 2002. While this software is like other software the supervisors of elections currently uses, the cost of the software is eligible for the 400 million dollars of funding though the CARES Act.

Each county and municipality in Florida have local elections throughout the year,[4] and every day that a person cannot vote is an injury.  "The right to vote freely for the candidate of one's choice is of the essence of a democratic society, and any restrictions on that right strike at the heart of representative government." Harman v. Forssenius, 380 U.S. 528, 537 (1965); Jones v. Governor of Fla., 950 F.3d 795, 806 (11th Cir. 2020) ("The denial of the opportunity to cast a vote that a person may otherwise be entitled to cast—even once—is an irreparable harm.").  The major statewide primary is on August 18, 2020.[5]  According to the Democracy Live vendor, the software would need to be implemented at least 45 days prior to that date, which would be July 4, 2020.

In this case, there is no hardship on the Defendants.  In fact, if they cooperate and work together, the price of the software and implementation may be paid for out of available funds from the CARES Act. Furthermore, the Intervenors' right to vote independently is an interest which the State of Florida has already deemed to

---

[4] See https://dos.elections.myflorida.com/calendar/
[5] https://dos.myflorida.com/elections/for-voters/election-dates/

be an important interest and has previously directed that such ballots must be made accessible.

### D. If issued, the injunction would not be adverse to the public interest.

"The public, of course, has every interest in ensuring that their peers who are eligible to vote are able to do so in every election. See Husted, 697 F.3d at 437 ("The public interest ... favors permitting as many qualified voters to vote as possible."). The preliminary injunction does no more than safeguard that interest." <u>Jones v. Governor of Florida</u>, 950 F.3d at 831.

**WHEREFORE**, Intervenors, DEBORAH GRUBB, DOUGLASS E. HALL, CARL F. MCCOY, JAMES KRACHT, DOLOR GINCHERAU, and the FLORIDA COUNCIL OF THE BLIND respectfully request this Court enter a preliminary injunction immediately requiring Secretary of State Lee to immediately certify the Democracy Live software, and to facilitate purchase of such software with the County Defendants prior to July 4, 2020, and implement its usage, including (1) appropriate training to the county supervisors of elections and their staff, (2) advertising availability of such accessible absentee ballots to the public; and such other relief as the Court deems just and proper.

Respectfully submitted this 11th day of June, 2020.

By:  s/ *Matthew W. Dietz*

Matthew W. Dietz, Esq.
Florida Bar No. 84905

## CERTIFICATION OF WORD COUNT

**I HEREBY CERTIFY,** pursuant to Northern District of Florida Local Rule

7.1(F), that this motion contains approximately 6,373 words.

By:  s/ *Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(B), the attorney for the moving party made an

attempt in good faith to resolve the issue through a meaningful conference with an

attorney for the adverse party, and the Defendants object to the relief herein.

By:  s/ *Matthew W. Dietz*
Matthew W. Dietz, Esq.
Florida Bar No. 84905

*Nielsen, et al v. DeSantis et al*
*Case No. 1:20-cv-236-RH- MTF*
*Page 24 of 24*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 11, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send notice of electronic filing to all parties and counsel of record in the herewith service list, or in some other authorized manner for those counsel or parties who are not authorized to receive notices electronically.

By: s/ *Matthew W. Dietz*
MATTHEW W. DIETZ, ESQ.
Florida Bar No.: 00849
DISABILITY INDEPENDENCE GROUP, INC.
2990 Southwest 35th Avenue
Miami, Florida 33133
Tel: (305) 669-2822
Fax: (305) 442-4181
Mdietz@justDIGit.org
aa@justdigit.org