## United States District Court for the Northern District of Florida Tallahassee Division

**Kirk Nielsen**, et al.,

    *Plaintiffs*,

v.

**Ron DeSantis**, in his official capacity as Governor of the State of Florida, et al.,

    *Defendants*.

**Consolidated Case No. 4**:20-cv-00236-RH-MJF

## Miami-Dade Defendants' Supplemental Trial Brief and, In the Alternative, Motion for Summary Judgment

Defendants Miami-Dade County Canvassing Board and Christina White, in her official capacity as Supervisor of Elections for Miami-Dade County, ("Miami-Dade Defendants"), pursuant to Fed. R. Civ. P. 56, hereby files this Supplemental Trial Brief and, in the alternative, Motion for Summary Judgment.

The Miami-Dade Defendants have joined and adopted the Secretary of State's Trial Brief for all claims that are asserted against the Miami-Dade Defendants because Florida law requires Supervisors of Elections to defer to the Secretary of State on "the proper and equitable interpretation and implementation" of Florida's Election Code. *See* Fla. Stat. § 97.012 (authorizing Secretary of State to "[o]btain

and maintain uniformity in the interpretation and implementation of the election laws"). However, the Miami-Dade Defendants provide this supplemental trial brief to address issues or present evidence that relate exclusively to Miami-Dade County.

## Memorandum of Law

### I.     The Miami-Dade Defendants are Entitled to Judgment in their Favor on All Claims raised by the *Nielsen* Plaintiffs

In this consolidated action, the plaintiffs in *Nielsen, et al. v. DeSantis, et al.* (Case No. 4:20-cv-00236) have filed a five-count complaint challenging three aspects of Florida election law: (1) the absence of a requirement that vote-by-mail ballots include pre-paid return envelopes; (2) the requirement that a domestic vote-by-mail ballot be received no later than 7 p.m. on Election Day in order to be counted (Fla. Stat. § 101.67); and (3) the prohibition on any person accepting "a pecuniary or other benefit in exchange for distributing, ordering, requesting, collecting, delivering, or otherwise more than two vote-by-mail ballots per election in addition to his or her own ballot or a ballot belonging to an immediate family member" (Fla. Stat. § 104.0616).[1]

---

[1]     The operative complaint for the *Nielsen* Plaintiffs can be found at D.E. 292-1.

Because this Court has already dismissed the claims relating to pre-paid postage for vote-by-mail ballots, the Miami-Dade Defendants will only address the two remaining aspects of Florida election law that the *Nielsen* Plaintiffs challenge.

### A. The *Nielsen* Plaintiffs have Conceded that the "Voter Assistance Ban" Claims Do Not Apply to the Miami-Dade Defendants

In their Second Amended Complaint, the *Nielsen* Plaintiffs assert that Counts I IV, and V, which deal with the Voter Assistance Ban in whole or in part, are applicable to all defendants. *See* D.E. 291-1 at pp. 51, 63, 67. In response to that claim, County defendants have argued through multiple filings that they are not proper parties to any claims relating to the Voter Assistance Ban because "neither supervisors of election nor canvassing boards play any role in enforcing Fla. Stat. § 104.0616(2)." D.E. 105 at 13-17. *Accord* D.E. 237 at 5-6.[2]

Since then, the *Nielsen* Plaintiffs have conceded that they agree with the County Defendants' position. *See* D.E. 285 at 19, n.19 ("The *Nielsen* Plaintiffs do not contend the County Defendants are proper Defendants for Plaintiffs' claims related to the Voter Assistance Ban. The Defendants to whom that claim is addressed are the Secretary and the Attorney General. *See* ECF No. 245 at 27-33.").

---

[2]   In a supplemental declaration accompanying this trial brief, Supervisor White also attests that the Miami-Dade Defendants "do not enforce the provisions of Fla. Stat. § 104.0616" and "count all valid, timely received vote-by-mail ballots regardless of the method of delivery." *See* Supplemental Declaration at ¶¶ 19-20.

Given this concession, the Miami-Dade Defendants ask that this Court dismiss or enter judgment in their favor on Counts I, IV, and V as they relate to the Voter Assistance Ban.

## B. The "Election Day Receipt Deadline" Does Not Unduly Burden the Right to Vote and Does Not Violate Procedural Due Process

With respect to Counts I and II, which deal with the Election Day Receipt Deadline in whole or in part, the Miami-Dade Defendants rely upon the arguments and evidence provided in prior filings by defendants in this matter. *See, e.g.*, D.E. 237, 290.

## II. The Miami-Dade Defendants are Entitled to Judgment in their Favor on All Claims Raised by the *Williams* Plaintiffs

In this consolidated action, the plaintiffs in *Williams, et al. v. DeSantis, et al.* (Case No. 1:20-cv-00067) have filed a six-count complaint that has now been supplemented by a Notice of More Definite Statement containing 34 alleged acts that they ascribe to certain groups of defendants with varying levels of specificity, D.E. 68. The Third Amended Complaint brings the following six counts: (1) a claim that various aspects of the State of Florida's vote-by-mail laws place an undue burden on the right to vote under the *Anderson-Burdick* framework; (2) a claim that various aspects of Florida's vote-by-mail laws and the implementation of its online voter registration system violate Section 2 of the Voting Rights Act of 1965; (3) a

MIAMI-DADE COUNTY ATTORNEY'S OFFICE
(305) 375-5151

claim that various aspects of Florida's election laws violate Title II of the American with Disabilities Act; (4) a related claim that those same aspects of Florida's election laws violate Section 504 of the Rehabilitation Act; (5) a claim that the failure to provide Spanish-language ballots and other election-related material in some parts of the state violates Section 203 of the Voting Rights Act of 1965; and (6) a claim that various aspects of Florida's vote-by-mail laws violate the Due Process Clause of the 14th Amendment. *See* D.E. 341-1.

After being ordered to provide a more definite statement, the *Williams* Plaintiffs listed 34 separate actions and, for each action, they included—with varying degrees of specificity—the defendants that correspond to that action. D.E. 68. The *Williams* Plaintiffs did not, however, identify which of their six claims applied to each of the 34 separate actions.

In addition, the *Williams* Plaintiffs' discovery responses have suggested additional uncertainty over what they are claiming and against whom. For example, in response to interrogatories from other supervisors of elections concerning Fla. Stat. § 104.0616, the *Williams* Plaintiffs responded that they "ha[ve] not asserted any cause of action against the [ ] Supervisors Defendants challenging the prohibition set forth in section 104.0616 Florida Statutes." The *Williams* Plaintiffs made this representation despite asserting in their More Definite Statement that Item 16

applied to "all supervisors of elections" even though that item exclusively deals with Fla. Stat. § 104.0616. *See* D.E. 68 at 5.

In a similar vein, the *Williams* Plaintiffs have indicated that other items apply to "all supervisors of elections" without any supporting allegations in their pleadings or, in many instances, a good faith basis to make such a claim. In so doing, they have treated the 67 Supervisors of Elections as a monolithic group with no allegations as to what any specific county has done and left it for each supervisor of elections to determine whether they have sufficiently acted in a manner that meets the *Williams* Plaintiffs' litmus test. For example, the *Williams* Plaintiffs assert a claim in Item 13 against all supervisors of election for "failing to deliver Spanish-language mail ballots or requiring voters to make a second request to receive a Spanish-language ballot" even though multiple counties, including Miami-Dade County, provide all ballots in Spanish. *See* D.E. 68 at 4. In many instances, the inapplicability of certain claims to certain counties should have been apparent to the *Williams* Plaintiffs following the reasonable inquiry required under Fed. R. Civ. P. 11(b). But, rather than assume the responsibility of clarifying their claims through one of their three amended complaints, they have left it for the defendants and the Court to do it for them.

"Under the Civil Rules, notice of a claim is a defendant's entitlement, not a defendant's burden." *Rodriguez v. Doral Mortg. Corp.*, 57 F.3d 1168, 1172 (1st Cir.

1995). In this case, the *Williams* Plaintiffs slipshod filings have created a burden for the Miami-Dade Defendants to discern what claims apply to them and what evidence needs to be offered in defense of those claims. This Trial Brief and Motion for Summary Judgment represents the Miami-Dade Defendants' best effort to divine the *Williams* Plaintiffs' intent.

### A. Count V and Items 8, 9, 10, and 13 (Spanish Language Claims)

Under Count V, the *Williams* Plaintiffs have alleged that defendants have "fail[ed] to provide VBM ballots, related instructions and documents to request, mark, return, and cure VBM ballots and other electoral materials in Spanish-language as provided to English-language voters." D.E. 341-1 at ¶ 144. Similarly, Items 8, 9, 10, and 13 from the More Definite Statement relate to Spanish language issues. *See* D.E. 68 at 3-4. In Miami-Dade County, all ballots and election-related materials are provided in three languages—English, Spanish, and Haitian Creole. *See* Deposition of Christina White at 147:20-148:20. *See also* Ex. A-C in Supplemental Declaration.

In light of this unrebutted testimony from Supervisor White, the various multi-lingual election-materials attached to this filing, and the lack of any allegation by the *Williams* Plaintiffs relating to Miami-Dade County, there is no material dispute that Miami-Dade County meets its obligations under Section 203 of the Voting Rights

Act. *See United States v. Sandoval Cty., N.M.*, 797 F. Supp. 2d 1249, 1253–54 (D.N.M. 2011) (explaining that the reasonable effectiveness standard under Section 203 "does not demand perfection, but only" something akin to "substantial compliance").[3] Accordingly, this Court should enter summary judgment in favor of the Miami-Dade Defendants on these corresponding claims.

### B. Other Acts Relating to Mail Ballot Requests (Items 1, 2, 6, and 11)

For Items 1, 2, and 6, this Court has already determined that the *Williams* Plaintiffs are not likely to succeed on the merits with these claims. *See* D.E. 332 at 3. The Miami-Dade Defendants, therefore, will not belabor over these issues. Instead, for Items 1 and 2, the Miami-Dade Defendants simply incorporate by reference the argument on these issues that they offered in their Motion to Dismiss, *see* D.E. 256 at 6-8, and note the election administration concerns raised in Supervisor White's original declaration, *see* D.E. 290-3. For Item 6, the Miami-Dade Defendants note

---

[3]  In their forthcoming answer, the Miami-Dade Defendants will also assert as an affirmative defense that the plain language of Section 203 of the Voting Rights Act does not contain a private right of action because the enforcement provision, codified at 52 U.S.C. § 10504, only authorizes the Attorney General to take action to enforce compliance. The Miami-Dade Defendants recognize that the 11th Circuit, in *Schwier v. Cox*, 340 F.3d 1284, found an implied right of action for a different provision of the Voting Rights Act. However, the 6th Circuit has held the opposite. *See McKay v. Thompson*, 226 F.3d 752, 756 (6th Cir. 2000). And the Supreme Court has yet to reconcile this circuit split. As a result, the Miami-Dade Defendants seek to preserve this defense and argument.

this issue is moot as to Miami-Dade County because the Miami-Dade Elections Department has already sent "every household with at least one voter who does not have a vote-by-mail ballot request on file a vote-by-mail ballot form for each registered voter in the household without a vote-by-mail ballot request on file along with instructions on how to request a vote-by-mail ballot and the importance and process for updating the voter's signature on file with elections to encourage the expanded use of vote-by-mail." Miami-Dade County, Resolution No. R-453-20. *See also* Deposition of Christina White 27:2-9, 89:22-90:3, 93:12-15 (describing how vote-by-mail request forms were sent to over 700,000 households and that prepaid postage was provided as well).

For Item 11, voters in Miami-Dade County are already given notice of a potential address issues when making vote-by-mail requests in at least three different ways. First, Miami-Dade's Vote-By-Mail Ballot Request Form explicitly asks the voter to provide their "Current Miami-Dade County Residence Address," and it also gives the voter the option to mark "if this is a change of your residential address." *See* Supplemental Declaration of Christina White at ¶ 12.[4] Second, if a voter requests a

---

[4] The form also states: "The U.S. Post Office will not forward vote-by-mail ballots to a different address. Pursuant to State Law, if any first class mail addressed to you is returned as undeliverable to our office, the request for ballots will be cancelled until a new address is provided. It is up to you to keep us informed when you leave during the election season." *Id.*

MIAMI-DADE COUNTY ATTORNEY'S OFFICE
(305) 375-5151

vote-by-mail ballot online and "provides a residence address that does not match the information on file, the online portal notifies the voter that the system could not find the voter's record using the information provided." *Id.* at ¶ 13. Third, if a voter requests a vote-by-mail ballot online and "provides the residential address on file but then requests to send their ballot to a different address, the system notifies the voter that the specified delivery address is not currently on file in the Florida Voter Registration System for that voter." *Id.*

Accordingly, this Court should enter summary judgment in favor of the Miami-Dade Defendants on these corresponding claims.

**C. Other Claims Relating to Mail Ballot Delivery (Items 12 and 14)**

For Item 12, the *Williams* Plaintiffs allege that all supervisors of elections fail "to notify voters by forwardable mail when their mail ballots have been returned as undeliverable." D.E. 68 at 4. However, the Miami-Dade Elections Department sends notices to those voters. However, the timing of those notices occurs in accordance with Fla. Stat. § 98.065(5) to "protect[] voters from having their voter information or status altered too close to a federal election by voter registration list maintenance activities." *See* Supplemental Declaration at ¶¶ 17-19.

For Item 14, the State of Florida has not yet certified "a feasible, reliable, secure method by which blind individuals can cast a remote secret ballot." D.E. 369 at 2.

*See also* Deposition of Christina White at 150:9-13. However, Miami-Dade County does wish to emphasize that it is the preference of Miami-Dade County when dealing with changes "to all voting equipment, all software, all hardware" to "launch it in a smaller election where [the Department] can try it out, refine [their] procedures, understand what [it's] dealing with, see if there are any concerns that need to be addressed within the software ... so that when [the Department does] have to launch it on a larger scale in a big election, [it is] ready for it." *Id.* at 150:15-151:1.

### D. Claims Relating to Mail Ballot Return (Items 15, 16, and 19)

For Item 15, this Court has already determined that the *Williams* Plaintiffs are not likely to succeed on the merits of this claim. *See* D.E. 332 at 3. The Miami-Dade Defendants merely wish to emphasize the election administration concerns raised by Supervisor White in her original declaration, D.E. 290-3. Supervisor White also provided additional testimony in support of this point at her deposition. *See* Deposition of Christina White at 56:9-57:1; 57:21-58:14; 60:8-11; 60:18-61:3; 83:22-84:7; 113:16-114:19; 117:2-6.

For Item 16, the *Williams* Plaintiffs have already suggested through discovery that they "ha[ve] not asserted any cause of action against the [ ] Supervisors Defendants challenging the prohibition set forth in section 104.0616 Florida Statutes." Because Item 16 deals exclusively with Fla. Stat. § 104.0616, the Miami-Dade Defendants

request that this Court dismiss this claim. *See also* Supplemental Declaration at ¶¶ 19-20.

For Item 19, the *Williams* Plaintiffs allege that all supervisors of elections fail "to provide drop-boxes for vote-by-mail ballots at polling place locations during the early voting period and on election day." D.E. 68 at 5. However, Miami-Dade County has already agreed to provide drop-boxes for vote-by-mail ballots during the 2020 Primary and General Elections. *See* D.E. 290-3 at ¶ 30. Those drop-boxes will be outdoor drive-through locations placed at (1) all early voting sites during the same days and hours of operation as the early voting sites and (2) four sites geographically dispersed across Miami-Dade County on Election Day during the same hours that polls are open. *Id. See also* Deposition of Christina White at 100:9-103:1. This issue is, therefore, moot as to Miami-Dade County.

### E.  Claims Relating to Counting or Curing Mail Ballots (Items 20-24)

For Item 20, the *Williams* Plaintiffs take issue with the fact that state law provides a deadline of 5 p.m. on the second day after the election for any voter to submit a cure affidavit in order to cure a signature deficiency with their vote-by-mail ballot. D.E. 68 at 5. To avoid redundancy, Miami-Dade County relies upon the argument in its previously filed Motion to Dismiss as to the state interests in providing such a deadline. D.E. 256 at 12-13. In addition, the original declaration from Supervisor

White and her deposition testimony provide additional support. *See* D.E. 290-3 at ¶ 13 (recognizing that the state law "provides narrow time frames for Supervisors of Election to complete essential election responsibilities" including the return of first unofficial results by noon on the fourth day after the General Election or noon on the third day after the Primary Election); Deposition of Christina White at 57:21-58:14; 60:8-11; 83:22-84:7.

For Item 21, the *Williams* Plaintiffs allege that supervisors of elections and canvassing boards "reject[] mail ballots without notifying the affected voters of ballot deficiencies." D.E. 68 at 6. As a general matter, however, Florida law requires all voters with signature deficiencies to be notified via e-mail, text message, or phone, in addition to a mailed notice. *See* Fla. Stat. § 101.048(6)(a). More specifically, Miami-Dade County provides that notice to all voters. As described by Supervisor White, the Miami-Dade Elections Department send notices to voters as soon as their vote-by-mail ballot has been identified as even having a ***potential*** issue during a preliminary review by department staff. See Deposition of Christina White at 128:11-15. The Miami-Dade Elections Department "[does not] wait until the point at which it goes to the canvassing board, because [the Department's] goal it so give the voter the maximum amount of time possible to correct any type of deficiency. *Id*. at 128:16-18. In most instances, that notice is sent out the same day that the ballot was received

by the Elections Department. *Id*. at 128:19-129:6. And the Miami-Dade Elections Department attempts to contact voters by ***every*** possible method of communication (text message, email, phone call, and mail) in all three languages (English, Spanish, and Creole) for ***each*** voter. *Id*. at 128:19-129:19. Lastly, these outreach efforts to contact voters occurs even for ballots received on Election Night, with the Election Department even attempting to contact voters "on election night so that they have the full two days up until the deadline to … comply with the affidavit." *Id*. at 130:3-6.

For Item 22, the *Williams* Plaintiffs allege that supervisors of elections and canvassing boards "reject[] cure affidavits that are not accompanied by identification when identification is not necessary to verify the voter's identity." D.E. 68 at 6. However, the procedures for accepting cure affidavits are provided in Fla. Stat. § 101.68(2)(c)(1) and voters are also given express notice on the cure affidavit of the relevant identification requirements, *see* Fla. Stat. § 101.68(4)(c). *See also* Supplemental Declaration at ¶ 23.

For Item 23, the *Williams* Plaintiffs allege that supervisors of elections and canvassing boards "reject[] cure affidavits based on signature mismatch when affidavit is accompanied by valid identification establishing the voter's identity." D.E. 68 at 6. However, Florida law already allows cure affidavits to be accepted even

when there is a signature mismatch if the voter provides valid identification. *See* Fla. Stat. § 101.68(2)(c)(1). And, more specifically, Miami-Dade County "do[es] not reject a vote-by-mail ballot cure affidavit that contains a mismatched signature if the voter has submitted one of the valid forms of identification provided under state law." Supplemental Declaration at ¶ 22.

For Item 24, the *Williams* Plaintiffs allege that supervisors of elections "fail[] to inform voters of relevant identification requirements to remedy a signature mismatch where verification of identity is needed." D.E. 68 at 6. However, "the notices that the Miami-Dade County Elections Department provides to voters who have potential signature deficiencies with their vote-by-mail ballot includes information of the relevant identification requirements to cure any signature deficiencies." *See* Supplemental Declaration at ¶ 23.

In light of the evidence provided, this Court should enter summary judgment in favor of the Miami-Dade Defendants on these corresponding claims.

### F. Claims Relating to In-Person Voting (Items 26-29)

For Item 26, the *Williams* Plaintiffs have alleged that supervisors of elections have "[c]los[ed] and consolidate[ed] polling places without providing equally accessible alternative polling locations." D.E. 68 at 6. However, in Miami-Dade County, there were only 8 polling places (out of a total of more than 600) that were required to

close or consolidate during the March 2020 Presidential Preference Primary because they were either located at assisted living facilities or nursing homes or they were shut down to the public by the Department of Health. See Deposition of Christina White at 24:11-19. For each of those polling place closures, the Elections Department sent those voters to "the next closest voting location to the one that we already were sending them to," and these new locations were mere "blocks away from each other in most cases." *Id.* at 71:9-10. The Miami-Dade Elections Department will also employ this same strategy during the upcoming elections of sending voters to the next closest precinct. *Id.* at 71:11-14. Thus, even when a relatively few number of locations in Miami-Dade County need to be consolidated for public health reasons, it will not result "in any kind of drastic changes that [will be] causing people to have to go very far." *Id.* at 71:14-17.

For Item 27, the *Williams* Plaintiffs have alleged that supervisors of elections have "[f]ail[ed] to expand early voting days, hours, and locations." D.E. 68 at 7. However, Miami-Dade County already plans to offer Early Voting for the maximum number of days during the 2020 Primary Election and the maximum number of days and hours during the 2020 General Election. Deposition of Christina White at 102:12-15. In Miami-Dade County, Early Voting will take place at 23 locations during the 2020 Primary Election and 33 locations during the 2020 General Election. *Id.* at 105:6-

106:21. In addition, the differences between the amount of locations for the 2020 Primary and General Election is due to differences in voter demand because primary elections have historically lower turnout than general elections. *Id.* at 107:1-2. Lastly, these locations are geographically dispersed so that "you have barely any voters [in Miami-Dade County] that are traveling more than two to three miles to get to one of our early voting sites." *Id.* at 109:4-7.

For Item 28, the *Williams* Plaintiffs have alleged that supervisors of elections have "[f]ail[ed] to provide curbside voting at polling places and during early voting." D.E. 68 at 7. However, as explained in response to Item 19, Miami-Dade County is providing outdoor, drive-thru locations for voters to return their vote-by-mail ballots. *See also* D.E. 290-3 at ¶ 30.

For Item 29, the *Williams* Plaintiffs have alleged that supervisors of elections have "[f]ail[ed] to expand [the] availability of supervised voting" and "cancell[ed] supervised voting in facilities with large numbers of at-risk voters without providing safe and accessible alternatives." D.E. 68 at 7. However, under state law, supervised voting may only be provided at assisted living facilities or nursing homes. *See* Fla. Stat. § 101.655. And, pursuant to an emergency order issued by the State of Florida's Division of Emergency Management, entry by individuals not providing essential care to residents at all assisted living facilities or nursing homes during the current

17

state of emergency is generally prohibited. *See* Supplemental Declaration at ¶ 24. Therefore, supervised voting cannot be expanded at this point in time. In addition, "the Miami-Dade Elections Department has been in communication with all facilities in Miami-Dade County that had previously participated or expressed interest in supervised voting." *Id.* at ¶ 26. And "depending on the facility's preference, the Miami-Dade Elections Department either provided vote-by-mail request forms directly to the facility for all residents or gave the facility instruction on how to obtain and print forms on its own so that those residents could continue to participate in the upcoming elections through vote-by-mail." *Id.*

In light of the evidence provided, this Court should enter summary judgment in favor of the Miami-Dade Defendants on these corresponding claims.

## G. Count II (Section 2 of the Voting Rights Act)

In their complaint, the *Williams* Plaintiffs have asserted a claim against all defendants under Section 2 of the Voting Rights Act based upon alleged disparities in the vote-by-mail process. *See* D.E. 341-1 at pp. 62-64. Notably, none of the 34 actions that were listed in the More Definite Statement concern or even reference racial disparities. *See generally* D.E. 68. Thus, the Miami-Dade Defendants will endeavor to respond to this claim generally because the *Williams* Plaintiffs have failed to indicate what specific actions correspond to this claim.

18

Based upon the exhibits filed in support of their Motion for Preliminary Injunction, it appears that the *Williams* Plaintiffs are attempting to rest the vote-by-mail elements of Count II exclusively upon the expert testimony of Dr. Daniel Smith. *See* D.E. 87-1 at 36-37. However, at deposition, Dr. Smith admitted that for Miami-Dade County any racial disparity in the rejection of vote-by-mail ballots was almost entirely attributable to disparities in ***unsigned*** ballots and that the rate of signature rejections was ***virtually identical*** (and effectively zero) across all races. *See* Deposition of Dr. Daniel Smith at 64:1-65:3 (agreeing that rate of "voter caused error"—or signature mismatches—in Miami-Dade County was effectively at 0 percent for White, Black, and Hispanic voters); 65:4-9 (Q: So at least for Miami-Dade County, any disparity in the rejection rates is almost entirely attributable to ***unsigned*** ballots and not to voter-caused error? A: Yes, for the ballots that are received on time, I would agree largely with that statement.") (emphasis added). Because the failure of a voter to sign a ballot is not an action that is attributable to the Supervisor of Elections or the Canvassing Board, it cannot serve as the basis for a claim of disparate treatment under the Voting Rights Acts.

In light of the evidence provided, this Court should enter summary judgment in favor of the Miami-Dade Defendants on these corresponding claims.

MIAMI-DADE COUNTY ATTORNEY'S OFFICE
(305) 375-5151

## CONCLUSION

For the reasons stated in this Trial Brief and in the relevant filings of any other defendants, the Miami-Dade Defendants request that this Court enter summary judgment in their favor on the relevant claims asserted by any of the plaintiffs in this consolidated action.

Date: July 3, 2020

Respectfully submitted,
**ABIGAIL PRICE-WILLIAMS**
MIAMI-DADE COUNTY ATTORNEY

By: */s/ Michael B. Valdes*
Michael B. Valdes and Oren Rosenthal
Assistant County Attorney
Florida Bar No. 93129

Miami-Dade County Attorney's Office
111 N.W. 1st Street, Suite 2810
Miami, Florida 33128
Phone:   (305) 375-5151
Fax:     (305) 375-5634
E-mail:  mbv@miamidade.gov

*Counsel for Christina White and the*
*Miami-Dade County Canvassing Board*

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served to all counsel of record through the Court's CM/ECF system on July 3, 2020.

*/s/ Michael B. Valdes*

Michael B. Valdes

Assistant County Attorney

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing complies with the size, font, and formatting requirements of Local Rule 5.1(C) and the word limit requirements of Local Rule 7.1(F).

*/s/ Michael B. Valdes*

Michael B. Valdes
Assistant County Attorney